# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: | |
| SUSAN WINOKUR, | Case No. 06-10735-RGM |
| | (Chapter 13) |
| Debtor. | |
| In re: | |
| MARGUERITE S. SODEN, | Case No. 06-11123-RGM |
| | (Chapter 13) |
| Debtor. | |
| In re: | |
| WENDY L. ADAMS, | Case No. 06-10503-RGM |
| | (Chapter 13) |
| Debtor. | |

## MEMORANDUM OPINION

These cases are before the court on the trustee's objection to confirmation of the debtors' chapter 13 plans. In each case, the debtors are above-median income debtors who proposed plans providing for payment during the applicable commitment period of amounts equal to or greater than the amounts computed in accordance with §1325(b)(2) but less than their actual net disposable income. The trustee objects, arguing that §1325(b) is not satisfied unless all of the debtor's actual net disposable income is devoted to the payment of the plan. Although he does not raise a good faith requirement, the court must consider it as a part of the confirmation process.

Much has been written by thoughtful and concerned judges on this issue. Another opinion would only repeat the already well-known analyses. Some cases hold, as the trustee argues, that actual disposable income controls. *See In re Edmunds,* 350 B.R. 636 (Bankr.D.S.C. 2006); *In re*

1

*Grady*, 343 B.R. 747 (Bankr.N.D.Ga. 2006); *In re Jass,* 340 B.R. 411 (Bankr.D.Utah 2006. Others hold, as the debtors argue, that the §1325(b) formula controls. *See In re Alexander,* 344 B.R. 742 (Bankr.E.D.N.C. 2006); *In re Barr*, 341 B.R. 181 (Bankr.M.D.N.C. 2006).

Congress sought to address the specter of bankruptcy abuse in the Bankruptcy Abuse Prevention and Consumer Protection Act it enacted in 2005 after many years of study and consideration. One area of perceived abuse was that debtors who could make meaningful payments to their creditors were choosing chapter 7 over chapter 13. Another was that those who chose chapter 13 could pay more than they were paying in their chapter 13 plans. There were many different opinions. Academics and others who studied the issues never reached a consensus on the extent of abuse. Estimates varied widely. One approach proposed to resolve these issues was the adoption of objective national standards both to act as a gateway into bankruptcy and to establish the amount of plan payments.

There are two approaches to setting plan payments: case-by-case determinations and standardized determinations. The Chandler Act of 1938 and the Bankruptcy Reform Act of 1978 both opted for individualized treatment of each chapter 13 case. In each bankruptcy case, the chapter 13 trustee examined the facts and circumstances of the debtor's financial affairs to determine on an individual basis what the debtor could afford to pay to his or her creditors. Creditors also had the opportunity to examine the debtor, the plan, and the schedules and to object to confirmation. Based on the chapter 13 trustee's recommendations, creditor objections (if any), the debtor's schedules, and any evidence taken at the confirmation hearing, the court determined if the debtor was devoting his or her actual projected net disposable income to the chapter 13 plan. The other approach is a formula applicable to all debtors. The debtor, the trustee and the court only need the

input, mainly the debtor's income. The formula mechanically determines the result, the amount of the plan payment. Neither approach is perfect. One consequence of the individualized approach is the seeming lack of uniformity and the consequent suspicion – sometimes well justified – that some debtors are taking advantage of the bankruptcy system by not paying everything that they could. One consequence of the formula approach is that it prevents some debtors who want to pay their creditors from succeeding because the computed payment is too much for their particular circumstances. Another consequence is the windfall some debtors receive when the mathematical formula results in a chapter 13 plan payment that is less than the amount that they can afford to pay.

Congress was undoubtedly aware of the tradeoffs between the two approaches. In 1938 and 1978, it chose the first; in 2005, the second. The statutory language is clear. The court has no discretion to substitute its judgment for that of Congress. *Alexander* properly analyzes the issues and this court can add nothing to the analysis.

*Alexander* and *Barr* properly address the good faith issue. If the sole objection to the debtor's good faith is that the debtor proposes to pay the amount Congress requires by the mathematical formula, the debtor has complied with the good faith requirement. He has done everything Congress asked him to do. Congress could have written the law differently. It could have separated the gateway test from the plan payment computation. It could have required a plan payment that was the greater of the mathematical formula or the debtor's actual ability to pay. It did not. It knew that the formula approach was not perfect and that some debtors would pay less than they could actually afford. This may be an abuse in a particular case, but Congress was concerned with the entire bankruptcy system. It may have concluded that although the abuse under the formula approach will be more visible than under the prior approach, total abuse will be less.

The arguments about the good faith test are best set forth in *Barr* and, again, the court cannot improve on the opinion.

For the reasons set forth above and in *Alexander* and *Barr*, the court will confirm the three plans. The chapter 13 trustee will present appropriate confirmation orders.

Alexandria, Virginia
January 18, 2007

                                                /s/ Robert G. Mayer
                                                Robert G. Mayer
                                                United States Bankruptcy Judge

Copy electronically to:

Robert R. Weed
Gerald M. O'Donnell

13355